**Opinion issued August 2, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00362-CV

———————————

## IN RE MARK P. HARDWICK, INDIVIDUALLY AND D/B/A MARK P. HARDWICK OIL & GAS PROPERTIES, AND MARK P. HARDWICK, LLC, Relators

---

### Original Proceeding on Petition for Writ of Mandamus

---

## O P I N I O N

Relators Mark P. Hardwick, individually and doing business as Mark P.

Hardwick Oil & Gas Properties, and Mark P. Hardwick, LLC bring this petition for

writ of mandamus challenging the trial court's denial of their motion to transfer venue.[1]  We conditionally grant the petition for writ of mandamus.

## Background

Real party in interest Smith Energy Company is in the business of developing oil and gas reserves.  In 2008, Smith Energy engaged Mark Hardwick, who lives and works in Midland, Texas, to provide services as its landman in several West Texas counties.  Pursuant to that engagement, Hardwick performed title searches, purchased oil and gas leases, and cured defects in title on Smith Energy's behalf.

In 2010, Smith Energy and Hardwick, along with other parties, entered into three sets of agreements.  Under each agreement, Hardwick was to obtain leases and rights of access from landowners within certain geographic areas.  Smith Energy compensated Hardwick both in cash and by granting interests in the leases that he acquired.  Under the "On Point" Geophysical Exploration Agreement, Hardwick was to receive a defined percentage of a working interest in leases acquired in a 45-square mile area extending across Lynn, Terry, and Dawson Counties.  Under the "Muy Caliente" Geophysical Exploration Agreement, he was to receive an equal share, along with three other parties, of a 25% undivided

---

[1]  The underlying case is *Smith Energy Company v. Mark P. Hardwick, individually and d/b/a Mark P. Hardwick Oil & Gas Properties, and Mark P. Hardwick, LLC*, No. 2011-68059 in the 55th District Court of Harris County, Texas, the Honorable Jeff Shadwick, presiding.

2

working interest in leases developed in a 145-square mile area extending across Lynn, Terry, Hockley, and Borden Counties, and he was to receive $12,500 for each of the first nine wells drilled in the area. Under the "Bad Billy" letter agreement, he was to receive a 1% overriding royalty interest, meaning he would receive 1% of all proceeds from any well drilled in an 86,000-acre area extending across Terry, Lynn, Yoakum, Hockley, and Lubbock Counties.

Over the course of their business relationship, Smith Energy paid Hardwick his fees and his other expenses incurred in connection with his services. But in August 2011, after a dispute over what expenses Smith Energy would reimburse, Hardwick resigned as Smith Energy's landman and refused to perform additional services.

Smith Energy sued Hardwick and his company, Mark P. Hardwick, LLC, in Harris County district court. Smith Energy alleged in its original petition that Hardwick's sudden resignation occurred before he completed his work, that he compromised the obligations that Smith Energy owed to other investors, and that his resignation forced the company to retain a substitute landman at additional cost. Smith Energy also alleged that, following Hardwick's resignation, it discovered multiple billing irregularities, including double-billing the company and other affiliates for work performed during the same time periods, billing for days when Hardwick was on vacation, and billing other hours when Hardwick did not work.

3

Additionally, Smith Energy alleged that Hardwick "duped" the company's president into signing an amendment to the "On Point" Geophysical Exploration Agreement by misrepresenting the amendment's contents, and it further alleged that he wrongfully refused to turn over proprietary title information belonging to the company. Smith Energy alleged causes of action for breach of fiduciary duty, breach of contract, fraud, and civil theft. In addition to requesting actual damages, exemplary damages, and attorney's fees, Smith Energy's prayer for relief requested "forfeiture of all compensation paid or granted to Defendants, including all assigned mineral interests and overriding royalty interests." These mineral and royalty interests, as described above, were specifically identified in the background section of the petition. In the original petition, Smith Energy also requested a temporary restraining order and a temporary injunction to prevent Hardwick and his company from destroying documents relating to the litigation.

Hardwick and Mark P. Hardwick, LLC responded with a combined general denial and motion to transfer venue. In the motion to transfer venue, Hardwick and his company construed Smith Energy's petition as effectively seeking an injunction due to its request for forfeiture of mineral and royalty interests, on the reasoning that the requested forfeiture only could be accomplished by an injunction ordering Hardwick and his company to assign and convey their interests to Smith Energy. Therefore, according to Hardwick and his company, the suit was one for

4

"a writ of injunction," making venue mandatory in the county of their domicile, Midland County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023(a) (West 2008). Alternatively, Hardwick and his company contended that venue was mandatory in Terry County because Smith Energy's suit sought "recovery of . . . interest in real property," and most of the land overlying those interests was located in that county. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West 2002). In the further alternative, Hardwick and his company contended that venue was mandatory in any of the other counties where the property interests at issue were located: Lynn, Hockley, Dawson, Yoakum, Borden, and Lubbock Counties.

After Hardwick and Mark P. Hardwick, LLC filed their motion to transfer venue but before the trial court ruled on the motion, Smith Energy filed its first amended petition. The allegations and causes of action in the first amended petition were substantially identical to those in the original petition; however, Smith Energy eliminated its request for a temporary restraining order or for a temporary injunction of any kind.

The trial court signed an order denying the motion to transfer venue. On the face of the order appears the following handwritten notation: "Under the case law,

the Court looks to the 'ultimate or dominant' purpose of the suit which, here, is a breach of contract (see cases cited at 28–29 of Plaintiff's brief.)."[2]

After the trial court signed its order denying the motion to transfer venue, Hardwick and Mark P. Hardwick, LLC filed a petition for writ of mandamus in this court. Since this original proceeding began, Smith Energy has filed two more amended petitions in the trial court, alleging that in the "Muy Caliente" Geophysical Exploration Agreement, the parties had contractually agreed to venue in Harris County.

## Analysis

In their petition for writ of mandamus, Hardwick and Mark P. Hardwick, LLC argue that the trial court erred by denying their motion to transfer venue. They contend that because Smith Energy effectively seeks an injunction when it prays for forfeiture of Hardwick's mineral and royalty interests, venue is mandatory under Section 65.023 of the Civil Practice and Remedies Code in the defendants' county of domicile, in this case, Midland County. Alternatively, they

---

[2] The notation refers to one of Smith Energy's filings entitled "Plaintiff's Opposition to Defendants' Motion to Transfer Venue." The cases cited on pages 28 and 29 of that filing are: *Karen Corp. v. Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118 (Tex. App.—Fort Worth 2003, pet. denied); *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.); *KJ Eastwood Invs., Inc. v. Enlow*, 923 S.W.2d 255 (Tex. App.—Fort Worth 1996, orig. proceeding); *Trafalgar House Oil & Gas Inc. v. De Hinojosa*, 773 S.W.2d 797 (Tex. App.—San Antonio 1989, no writ); *Scarth v. First Bank & Trust Co.*, 711 S.W.2d 140 (Tex. App.—Amarillo 1986, no writ).

argue that because Smith Energy seeks recovery of real property interests, venue is mandatory under Section 15.011 of the Civil Practice and Remedies Code in one of the counties where the land overlying the real property interests is located: Terry, Lynn, Hockley, Dawson, Yoakum, Borden, or Lubbock County. Hardwick and his company also dispute that venue is proper in Harris County on account of any venue provision in the "Muy Caliente" Geophysical Exploration Agreement, and they point out that Smith Energy did not plead that venue allegation before the trial court made its venue ruling.

Smith Energy responds that its lawsuit does not seek injunctive relief, but rather it primarily concerns a breach of contract claim seeking recovery of actual and punitive damages. It argues that by seeking forfeiture of mineral and royalty interests, which Hardwick acquired as contractual consideration, it is not seeking true injunctive relief. Responding to Hardwick and his company's argument that Smith Energy seeks recovery of real property interests, Smith Energy argues that the dominant and primary purpose of its suit is to determine whether Hardwick breached contractual or fiduciary duties. Smith Energy maintains that the fact that forfeiture of the mineral and royalty interests is a possible result does not make its lawsuit one to recover real property. Smith Energy also argues that the venue provision in the "Muy Caliente" Geophysical Exploration Agreement mandates venue in Harris County. It contends that Hardwick and his company should have

7

challenged this basis for venue in the trial court, and it suggests that this court could order the trial court to determine whether the contractual venue provision controls.

## I.  Standard of review

Mandamus relief is an appropriate remedy to enforce a mandatory venue provision when the trial court has denied a motion to transfer venue. *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 735 (Tex. 1998) (orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (West 2002).  "[T]he standard for reviewing mandatory venue under Section 15.0642 is whether the trial court abused its discretion." *Cont'l Airlines*, 988 S.W.2d at 735.  "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion . . . ." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

## II.  Effect of amended petitions filed after venue ruling

Rule 87 of the Texas Rules of Civil Procedure governs determinations on motions to transfer venue.  Part of that rule provides:

> If venue has been sustained as against a motion to transfer . . . then no further motions to transfer shall be considered regardless of whether the movant was a party to the prior proceedings or was added as a party subsequent to the venue proceedings, unless the motion to transfer is based on the grounds that an impartial trial cannot be had under Rules 257–259 or on the ground of mandatory venue, provided that such claim was not available to the other movant or movants.

TEX. R. CIV. P. 87(5). Thus, unless one of the exceptions in Rule 87(5) applies, only one venue determination may be made in a proceeding and changes in venue after the initial venue ruling are prohibited. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). If the trial court initially denies a motion to transfer venue, a subsequent motion to transfer venue resulting in a different venue determination violates Rule 87(5), and the second determination is void. *Dorchester Master Ltd. P'ship v. Anthony*, 734 S.W.2d 151, 152 (Tex. App.—Houston [1st Dist.] 1987, orig. proceeding); *accord In re Med. Carbon Research Inst., L.L.C.*, No. 14-07-00935-CV, 2008 WL 220366, at *1 (Tex. App.—Houston [14th Dist.] Jan. 29, 2008, orig. proceeding) (per curiam, mem. op.) ("[A] trial court has the authority to make only one venue determination.").

"The court shall determine the motion to transfer venue on the basis of the pleadings, any stipulations made by and between the parties and such affidavits and attachments as may be filed by the parties" in accordance with the applicable rules. TEX. R. CIV. P. 87(3)(b). The trial court must base its venue determination on the last pleading that was timely filed. *See Nabors Loffland Drilling Co. v. Martinez*, 894 S.W.2d 70, 73 (Tex. App.—San Antonio 1995, writ denied) (holding that plaintiffs were within their rights to amend petition prior to venue hearing); *Watson v. City of Odessa*, 893 S.W.2d 197, 200 (Tex. App.—El Paso 1995, writ denied) (holding that amended petition filed seven days before venue

9

hearing was timely and trial court was "bound" to consider it); *In re Fluor Enters., Inc.*, No. 13-11-00260-CV, 2011 WL 2463004, at *4 (Tex. App.—Corpus Christi Jun. 13, 2011, orig. proceeding) (memo. op.) (holding that amended petitions filed on the day of hearing were untimely pursuant to TEX. R. CIV. P. 63, and therefore they "were not before the trial court for its consideration"); *see also* TEX. R. CIV. P. 87(1) (providing that venue transfer movant must file any reply or additional affidavits supporting motion at least seven days before hearing date, except on leave of the court).

In this case, Smith Energy filed its original petition on November 9, 2011. Hardwick and Mark P. Hardwick, LLC filed their motion to transfer venue on December 5. Smith Energy then filed its first amended petition on December 21. Although the record does not reflect the date when the hearing on the motion to transfer venue was held, it does reflect that the trial court signed its order denying the motion on March 19, 2012. The parties do not dispute the timeliness of Smith Energy's first amended petition.

The parties do dispute whether this court may consider Smith Energy's second and third amended petitions, which contain an additional venue allegation that the parties had agreed in the "Muy Caliente" Geophysical Exploration Agreement that venue should be in Harris County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b) (providing that parties to a "major transaction" may agree

10

to venue in particular county).  These latter amended petitions were filed after the trial court ruled on the motion to transfer venue, and accordingly the trial court could not have considered them when it made its venue determination.  The scope of our review extends only to the trial court's March 19, 2012 venue determination, which is the ruling challenged in this original proceeding.  *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex. 2006) (orig. proceeding); TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642.  Accordingly, "we must focus on the record that was before the trial court," and we will not consider items that "were not part of the trial court record at the time of the hearing on the motion that is the subject of this original proceeding."  *In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.— Houston [1st Dist.] 2003, orig. proceeding).

We hold that Smith Energy was not entitled to maintain venue in Harris County on the basis of venue allegations made in its second and third amended petitions.  Moreover, because the venue determination can be made only once, *see Team Rocket*, 256 S.W.3d at 259, absent certain circumstances not present here, *see* TEX. R. CIV. P. 87(5), we will not order the trial court to reconsider its determination on the basis of the second and third amended petitions or any further amended petitions that Smith Energy may file.

11

### III. Mandatory venue for "writ of injunction" — TEX. CIV. PRAC. & REM. CODE ANN. § 65.023(a)

The Civil Practice and Remedies Code specifies that "a writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled." TEX. CIV. PRAC. & REM. CODE ANN. § 65.023(a). This mandatory venue provision "applies only to suits in which the relief sought is purely or primarily injunctive." *Cont'l Airlines*, 988 S.W.2d at 736. When the pleadings request an injunction that is "merely ancillary to a judgment awarding recovery of lands," Section 65.023(a) has no application. *Brown v. Gulf Television Co.*, 306 S.W.2d 706, 708 (Tex. 1957) (analyzing predecessor statute). Thus, the mere possibility that a court will resort to its injunctive powers to enforce a judgment does not by itself transform a suit into one for a "writ of injunction" within the meaning of Section 65.023(a). *Cont'l Airlines*, 988 S.W.2d at 736–37.

Although the relevant petition in this case does not expressly seek injunctive relief, Hardwick and Mark P. Hardwick, LLC argue that Smith Energy's prayer for "forfeiture of all compensation paid or granted . . . including all assigned mineral interests and overriding royalty interests" necessarily seeks injunctive relief because, if Smith Energy prevails, the court will order them to execute conveyances of mineral and royalty interests. They contend that such an order constitutes an injunction.

12

This proceeding thus presents the question of whether the forfeiture requested in Smith Energy's first amended petition is tantamount to a "writ of injunction" within the meaning of Section 65.023(a). The term "writ of injunction" is not defined by statute. In the absence of a statutory definition, we apply statutory terms according to their ordinary meanings. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). We presume that the Legislature enacts statutes with knowledge of the common law and court decisions. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999). Thus, in determining the ordinary meaning of an undefined statutory term that has a common-law meaning, we apply its common-law meaning. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241–42 (Tex. 1994).

"An injunction is a remedial writ that depends on the issuing court's equity jurisdiction." *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000). Matters of form do not control whether an order is an injunction; rather, "it is the character and function of an order that determine its classification." *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992). An injunction may be either prohibitive, forbidding particular conduct, or mandatory, requiring particular conduct. *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Universal Health Servs. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.); *see also Qwest*, 24 S.W.3d at

13

336 (observing that "[o]ne function of injunctive relief is to restrain motion and to enforce inaction" and recognizing that an order commanding a company to undertake certain actions was an injunction).  To be entitled to a permanent injunction, the plaintiff must plead and prove (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) absence of an adequate remedy at law.  *See, e.g.*, *Indian Beach Prop. Owners Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Courts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty.  *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010).  The equitable remedy of forfeiture must fit the circumstances presented.  *Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999).  Multiple factors can be relevant to deciding whether the party who breaches a fiduciary duty should forfeit his compensation and, if so, in what amount.  *See id.* (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 (Proposed Final Draft No. 1, 1996) (listing factors relevant to forfeiture of attorney's fees)); *see also id.* at 243 (citing RESTATEMENT (SECOND) OF TRUSTS § 243 cmt. c (1959) (listing factors relevant to forfeiture of trustee's compensation)).  Although the harm caused by the breach of fiduciary duty is one relevant factor in the forfeiture analysis, *see id.* at 243, a party seeking forfeiture

14

does not need to prove actual damages in order to be entitled to the remedy, *see id.* at 239–40 & nn.35–37.

Both injunction and forfeiture are equitable remedies to which the principles of equity apply. *See Burrow*, 997 S.W.2d at 245 (noting that principles of equity pertinent to constructive trusts also apply in forfeiture cases); *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 804 (Tex. 1979) (observing that "injunctive relief is proper when the trial court finds it justified under the rules of equity"); TEX. CIV. PRAC. & REM. CODE ANN. § 65.011(3) (providing that a court may grant a writ of injunction when the applicant is entitled "under the principles of equity"). However, the remedies differ in their fundamental purposes. The purpose of an injunction is to prevent ongoing or imminent injuries. *See Whitaker v. Dillard*, 16 S.W. 1084, 1085 (Tex. 1891) (observing that "the writ of injunction is used to prevent injuries, and not to afford remedy for injury inflicted"); *Wiese v. Heathlake Cmty. Ass'n, Inc.*, No. 14-11-00268-CV, 2012 WL 1009531, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) ("Generally, the purpose of injunctive relief is to halt wrongful acts that are either threatened or in the course of accomplishment."). By contrast, "the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty." *Burrow*, 997 S.W.2d at 238.

15

Because they have different purposes, injunction and forfeiture have different prerequisites. "A prerequisite for injunctive relief is the threat of imminent harm." *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 554 (Tex. 1998); *see also Morris v. Collins*, 881 S.W.2d 138, 140 (Tex. App.—Houston [1st Dist.] 1994, writ denied). But for forfeiture, there is no prerequisite that harm, imminent or otherwise, be shown. As the Supreme Court of Texas explained in *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999), limiting forfeiture's availability to instances in which the principal sustains actual harm would conflict with the purposes of the remedy:

> It is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation. An agent's compensation is not only for specific results but also for loyalty. Removing the disincentive of forfeiture except when harm results would prompt an agent to attempt to calculate whether particular conduct, though disloyal to the principal, might nevertheless be harmless to the principal and profitable to the agent. The main purpose of forfeiture is not to compensate an injured principal, even though it may have that effect.

*Burrow*, 997 S.W.3d at 238. Thus, the plaintiff seeking forfeiture of compensation for breach of fiduciary duty need not prove actual damages in order to be entitled to that equitable remedy. *Id.* at 240.

Since the purposes of and prerequisites for injunction and forfeiture are different, we conclude that the equitable remedy of forfeiture is not a variation or type of "injunction" under the ordinary common-law meaning of that term.

16

Accordingly, a plaintiff who requests the equitable remedy of forfeiture, as Smith Energy has, does not request a "writ of injunction" for the purpose of the mandatory venue provision of Section 65.023(a). To the extent that the trial court ultimately may resort to its injunctive powers to enforce a judgment of forfeiture by ordering Hardwick or Mark P. Hardwick, LLC to convey real property interests to Smith Energy, such an injunction would be ancillary to the suit and thus does not implicate Section 65.023(a). *See Cont'l Airlines*, 988 S.W.2d at 736–37; *Brown*, 306 S.W.2d at 708.

We hold that Smith Energy's first amended petition does not seek purely or primarily injunctive relief, and therefore the mandatory venue provision of Section 65.023(a) does not require that the suit be transferred to Midland County, where the relators are domiciled. Accordingly, the trial court did not err in denying the motion to transfer venue pursuant to Section 65.023(a).

IV. **Mandatory venue for "recovery of . . . interest in real property" — TEX. CIV. PRAC. & REM. CODE ANN. § 15.011**

A separate mandatory venue provision of the Civil Practice and Remdies Code specifies:

> LAND. Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

17

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. This mandatory venue provision applies if Smith Energy's suit falls within one of the categories of actions identified in the statute. *Applied Chem.*, 206 S.W.3d at 117; *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 833 S.W.2d 736, 739 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The ultimate or dominant purpose of a suit determines whether it is for one of the identified actions, not how the cause of action is described by the parties. *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1982, no writ) (analyzing predecessor statute); *Airvantage, L.L.C. v. TBAN Props. # 1, L.T.D.*, 269 S.W.3d 254, 258 (Tex. App.—Dallas 2008, no pet.); *see also In re Kerr*, 293 S.W.3d 353 (Tex. App.—Beaumont 2009, orig. proceeding) ("[M]andatory venue provisions may not be evaded merely by artful pleading.").

The nature of the suit is determined from the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought. *Brown*, 306 S.W.2d at 708; *Maranatha Temple* 833 S.W.2d at 738 (citing *Renwar Oil Corp. v. Lancaster*, 276 S.W.2d 774, 775 (Tex. 1955)). Thus, once it is demonstrated that the court's judgment would have some effect on an interest in real property, the venue of the suit is properly fixed under Section 15.011. *Bracewell*, 638 S.W.2d at 615; *Airvantage*, 269 S.W.3d at 259. If Section 15.011 applies to one of the claims or causes of action in the petition, then all claims and causes of action arising from the same transaction must be brought in the county of mandatory venue. *See* TEX.

18

CIV. PRAC. & REM. CODE ANN. § 15.004 (West 2002); *see also Atl. Richfield Co. v. Trull*, 559 S.W.2d 676, 681 (Tex. Civ. App.—Corpus Christi 1977, writ dism'd) (observing that "[i]f two or more causes of action are joined, the first question is whether at least one of the claims falls within" the mandatory venue provision and "[t]here is no need . . . to compare the two causes of action to see which cause contains the primary right sought").

Our application of Section 15.011 is guided by two opinions of the Supreme Court of Texas. In *Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368 (Tex. 2001), a gas producer that owned mineral leases in Zapata County sued the royalty owners in a Dallas County district court. *Yzaguirre*, 53 S.W.3d at 370. The gas producer sought a declaratory judgment that it was required to pay royalties based on market value rather than a higher formula set out in a purchase agreement between the gas producer and the distributor. *Id.* The royalty owners moved to transfer venue to Zapata County under a prior, substantially similar version of Section 15.011, contending that the nature and extent of their royalties concerned an interest in real property. *Id.* at 371.[3]

---

[3] At the time the *Yzaguirre* suit began, Section 15.011 provided:

19

The Court observed in *Yzaguirre* that "[a]lthough the oil and gas leases are an interest in real property, the applicable version of section 15.011 applied only when ownership of the property was in dispute." *Id.* (citing *Maranatha Temple*, 833 S.W.2d at 738, and *Scarth v. First Bank & Trust Co.*, 711 S.W.2d 140, 141–42 (Tex. App.—Amarillo 1986, no writ)). The Court noted that the ownership, extent, boundaries, and percentages of the royalties were not in dispute. *Id.* It therefore concluded that "[b]ecause the suit does not involve recovering real property or quieting title," the mandatory venue provisions of the former version of Section 15.011 did not apply. *Id.*

In contrast to *Yzaguirre*, the mandatory venue provision was held to apply under the circumstances presented in *In re Applied Chemical Magnesias Corp.*, 206 S.W.3d 114 (Tex. 2006) (orig. proceeding). In that case, a mining company and a landowner executed a letter agreement granting the mining company an option to purchase a mineral lease to excavate marble on land located in Culberson County. *Applied Chem.*, 206 S.W.3d at 115. When the mining company attempted

---

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3247.

20

to exercise its option, the landowner refused to deliver the mineral lease on the basis that the mining company had not fully complied with the letter agreement. *Id.* The landowner filed a declaratory judgment action in San Saba County, the county of its principal place of business and the location where the letter agreement was negotiated and executed. *Id.* at 116. The mining company, relying on Section 15.011, moved to transfer venue to Culberson County. *Id.*

The Supreme Court of Texas in *Applied Chemical* construed the declaratory judgment mechanism employed by the landowner "as an indirect means of quieting title to the mineral estate." *Id.* at 119. The Court concluded that the "essence of this dispute" was whether the mining company had a right to mine marble on the land. *Id.* If so, the Court reasoned, the mining company had a mineral lease involving an interest in real property, thereby bringing the suit within Section 15.011's mandatory venue provision. *Id.*

We conclude that because Smith Energy has prayed for the equitable remedy of forfeiture to obtain from Hardwick and Mark P. Hardwick, LLC certain specified "mineral interests and overriding royalty interests," this case is more analogous to *Applied Chemical* than it is to *Yzaguirre*. In *Yzaguirre*, the rightful ownership of the royalty interests was not in dispute. *See Yzaguirre*, 53 S.W.3d at 371. In *Applied Chemical*, by contrast, the Court noted that the essence of the dispute was whether the mining company had a right to mine marble by virtue of

21

the option contained in the letter agreement. *See Applied Chem.*, 206 S.W.3d at 119. Thus, the parties in that case disputed, through the exercise of a contractual provision, whether one of them was entitled to an interest in real property. *See id.* Similarly, in this case, the parties dispute whether equity requires the "forfeiture of all compensation paid or granted to Defendants, including all assigned mineral interests and overriding royalty interests." If Smith Energy is successful in its suit, it will recover ownership of mineral and royalty interests.[4] Because this qualifies as a suit to recover real property interests, Section 15.011 applies. *See id.*

Smith Energy contends that the dominant purpose of its suit is not to recover an interest in real property, but rather it is "to decide whether Hardwick breached his agreement to act as Smith Energy's agent and his fiduciary duties by quitting and overbilling Smith Energy." Understood in their proper context, the authorities relied upon by Smith Energy for the proposition that the "ultimate" or "dominant" purpose of the suit determines its nature echo the principle that "[w]hether the recovery is called conversion, breach of contract, or other non-real property types

---

[4]  In briefing to this court, Smith Energy argued that "whether the [trial court] will order forfeiture of Relators' overriding royalty interest is purely discretionary with the court," and that "the mere possibility that Hardwick could be forced to forfeit his one percent interest . . . does not give rise to mandatory venue under section 15.011." This implies that Smith Energy in fact seeks forfeiture of the mineral and royalty interests as one of several remedies. During oral argument, Smith Energy expressly confirmed that, as one of its possible remedies, it is requesting an award of the ownership of the mineral and royalty interests at issue.

of recovery, the true nature of the lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought." *Airvantage*, 269 S.W.3d at 258.[5] For instance, in *Applied Chemical*, the plaintiff purported to file a declaratory judgment action to "clarify the rights and remedies of the parties under the letter agreement." *Applied Chem.*, 206 S.W.3d at 116. In that sense, the *Applied Chemical* dispute could be understood as having a dominant purpose of resolving a contractual dispute. The Court, however, looked beyond the "declaratory judgment mechanism" to discover what was, in substance, a suit to establish rightful ownership in real property. *See id.* at 119.[6] Similarly, although

---

[5] *See, e.g.*, *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex. App.—Houston [1st Dist.] 1982, no writ) ("It is the ultimate or dominant purpose of a suit that determines whether a particular suit falls under [Section 15.011's predecessor], and not how the cause of action is described by the parties."); *Airvantage, L.L.C. v. TBAN Props. # 1, L.T.D.*, 269 S.W.3d 254, 258 (Tex. App.—Dallas 2008, no pet.) ("[N]o special distinctions are made for real property suits simply because they are couched in terms of a declaratory judgment. . . . The ultimate or dominant purpose of a suit determines whether it falls under the mandatory venue statute.").

[6] *See also In re Kerr*, 293 S.W.3d 353, 358 (Tex. App.—Beaumont 2009, orig. proceeding) (in suit for breach of fiduciary duty and fraud, "Plaintiff's original pleading claimed entitlement to land in Harris County, sought its recovery in addition to profits and damages, and so was subject to section 15.011"); *McCasland v. Bennett*, 597 S.W.2d 46, 47–48 (Tex. Civ. App.—Waco 1980, no writ) (in breach of fiduciary duty suit seeking to impress constructive trust on property held in trust by trustee, suit was for the recovery of land); *Atl. Richfield Co. v. Trull*, 559 S.W.2d 676, 681 (Tex. Civ. App.—Corpus Christi 1977, writ dism'd) (in suit for forfeiture of oil and gas lease for failure to reasonably develop, "the principal right and relief sought . . . is to recover certain lands"); *Norvell v. Stovall*, 95 S.W.2d 1313,

23

Smith Energy's claims are premised upon allegations of breaches of contractual and fiduciary duties, through the mechanism of this lawsuit, Smith Energy in substance seeks, as part of its remedy, the recovery of real property interests. Because a judgment that awarded such relief would have some effect on an interest in real property, venue is properly fixed under Section 15.011. *Bracewell*, 638 S.W.2d at 615.

---

1315 (Tex. Civ. App.—Beaumont 1936, no writ) (in suit to cancel deed procured by fraud, "plaintiff's case . . . is not merely an action for fraud" rather "[t]he real purpose of the suit is the recovery of title to the land"); *Liles v. McDonald*, 63 S.W.2d 886, 886 (Tex. Civ. App.—Waco 1933, no writ) (in suit to cancel royalty deed procured by fraud, "the purpose of the action was to cancel the mineral deed and to remove cloud from the title to land").

**Conclusion**

We hold that the trial court erred by failing to transfer venue pursuant to Section 15.011. Accordingly, we conditionally grant Hardwick and Mark P. Hardwick, LLC's petition for writ of mandamus. We direct the district court to vacate its March 19, 2012 order denying the relators' motion to transfer venue, and we further direct it to grant the motion. Before granting the motion, the trial court may permit the parties to present additional evidence and arguments to help it determine to which county it should transfer venue. We are confident the district court will comply with our order, and our writ will issue only if it does not.

Michael Massengale
Justice

Panel consists of Justices Bland, Massengale, and Brown.