

**NUMBER 13-18-00268-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN RE EASTMAN CHEMICAL COMPANY AND EASTMAN IN ITS ASSUMED OR COMMON NAME

### On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Hinojosa
### Memorandum Opinion by Chief Justice Contreras

Relator Eastman Chemical Company[1] (Eastman) filed a petition for writ of mandamus contending that the respondent trial court[2] abused its discretion, leaving it without an adequate appellate remedy, by denying Eastman's motion to transfer based on a mandatory venue provision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. This

---

[1] Referred to as "Eastman Chemical Company and Eastman in its Assumed or Common Name" in the pleadings.

[2] The respondent in this original proceeding is the Honorable Robert J. Vargas, presiding judge of Nueces County Court at Law No. 1.

Court requested and received a response to the petition from real party in interest, Gulf Hydrogen and Energy, Inc. (Gulf), and Eastman filed a reply to the response. We will conditionally grant relief.

## I. BACKGROUND

Gulf filed the underlying suit in Nueces County on July 25, 2013. In its live petition, Gulf alleged that it contracted with Resurgence Asset Management (RAM) in 2007 to purchase the stock of Sterling Chemicals, Inc. (Sterling) for $392.5 million. Sterling's primary asset is a chemical plant located in Texas City, which is in Galveston County. Due to a conflict between RAM and Gulf, along with the 2008 financial crisis, the closing of the deal was delayed and eventually cancelled, even though Gulf had allegedly spent over $2 million preparing for the acquisition.

In 2011, Gulf again sought to purchase Sterling and began meeting and discussing the acquisition with "potential financial partners." On June 22 of that year, however, Eastman agreed to purchase Sterling for $100 million. The Eastman-Sterling agreement provided for a 40-day period, ending on August 1, 2011, during which Sterling could entertain other offers for the purchase of its stock.

Gulf's co-owner Kenneth Berry began discussions with Eastman executive Mike Humby and Eastman attorney David Woodmansee. According to Gulf, Humby and Woodmansee attempted to dissuade Gulf from making a bid for Sterling, and they told Sterling's shareholders that there were no other interested bidders.

Ultimately, according to Gulf, an oral agreement was reached under which Gulf would refrain from submitting a bid for Sterling. In exchange, after Eastman completed its purchase of Sterling, "[Gulf] would receive the right to operate three deep waste injection wells" at the Texas City plant, "including sufficient tankage and access to barge,

2

truck and rail transportation to operate those wells commercially." According to Gulf, Eastman "promised to execute any necessary writings after it closed on Sterling." However, after Eastman closed on its acquisition of Sterling on August 9, 2011, Eastman executive Jerry Matthew "denied and repudiated" the oral agreement.

Gulf's live petition alleged breach of contract, fraud, fraud by non-disclosure, fraud by inducement, statutory fraud, and promissory estoppel, and it sought actual damages that "greatly exceed" $1 million, along with attorney's fees and costs. The petition stated that Nueces County is a proper venue "because a substantial part of the events or omissions giving rise to [Gulf's] claims occurred" there. More specifically, it alleged that "many of the actions or omissions that constitute Eastman's culpable conduct in this matter took place in and/or were directed towards" Nueces County; that Gulf's "acts, dealings, and communications in forming the deal took place" in Nueces County; and that Gulf's principal office and principal place of business is located in Nueces County. In a section regarding damages, the petition also stated: "[Gulf] specifically disclaims that it is seeking recovery of real property or an estate or interest in real property."

Eastman answered the suit and moved to transfer venue on August 13, 2013. The motion to transfer argued that: (1) mandatory venue lies in Galveston County because Gulf's suit "seeks recovery of real property or an interest in real property located in Galveston County"; and (2) alternatively, permissive venue lies in Galveston County because "[a]ll or a substantial part of the events or omissions giving rise to [Gulf]'s claims occurred in Galveston County."[3] In an amended motion to transfer filed on July 18, 2017,

---

[3] As part of its argument for permissive venue in Galveston County, Eastman's motion to transfer stated in part:

Eastman denies Gulf Hydrogen's venue facts supporting permissive venue in Nueces County. More specifically, Eastman denies that "many of the actions or omissions that constitute Eastman's culpable conduct in this matter took place in and/or were directed

3

Eastman argued that the mandatory venue statute applies because Gulf "seeks enforcement of an agreement or compensation for loss from an agreement concerning rights and interests in real property" located in Galveston County. *See id.* Gulf filed a response arguing in part that Eastman had waived its motion to transfer "by waiting over four years to have it heard" and "by requesting affirmative relief from [the trial court] on over a dozen occasions." Eastman filed a reply to the response.

At a hearing on December 7, 2017, Gulf argued in part that Eastman failed to specifically deny the venue facts alleged in Gulf's petition; therefore, according to Gulf, the trial court was bound to take its venue allegations as true, and Gulf had no burden to produce prima facie proof thereof. *See* TEX. R. CIV. P. 87(3)(a). Gulf further argued that Eastman waived its motion to transfer because it did not seek a hearing on its original 2013 motion until 2017. The trial court took the matter under advisement. Later, the court granted leave for Gulf to file an affidavit to provide prima facie proof of its venue facts. Gulf then submitted "supplemental evidence" in support of its response to the motion to transfer.

On January 3, 2018, the trial court signed an order denying Eastman's amended motion to transfer. This original proceeding followed.

## II. DISCUSSION

Eastman argues by two issues that the trial court erred by (1) denying its amended motion to transfer, and (2) permitting Gulf to submit additional venue evidence under Texas Rule of Civil Procedure 87(3)(d).

towards Nueces County." Eastman further denies that "[Gulf]'s acts, dealings, and communications in forming the deal took place in Nueces County, Texas."

(Citations omitted.)

4

## A.     Standard of Review

To obtain relief by writ of mandamus, a relator ordinarily must establish that an underlying order is void or a clear abuse of discretion and that no adequate appellate remedy exists. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). A relator seeking to enforce a mandatory venue provision, however, need not prove that it lacks an adequate appellate remedy; instead, it is only required to show that the trial court clearly abused its discretion by failing to transfer the case. *See In re Lopez*, 372 S.W.3d 174, 176 (Tex. 2012) (orig. proceeding) (per curiam); *In re Mo. Pac. R.R.*, 998 S.W.2d 212, 215–16 (Tex. 1999) (orig. proceeding); *In re Signorelli Co.*, 446 S.W.3d 470, 473 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). Under the clear abuse of discretion standard, we defer to the trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide*, 494 S.W.3d at 712; *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

## B.     Applicable Law

Venue may be proper in more than one county under the general, mandatory, or permissive venue rules. *See GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998). A defendant raises the question of proper venue by objecting to a plaintiff's venue choice through a motion to transfer venue. *See* TEX. R. CIV. P. 86. The motion may allege that mandatory venue lies in a different county. TEX. R. CIV. P. 86(3)(b). If a plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must

5

grant the motion. *Wichita Cty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996); *Spin Doctor Golf, Inc. v. Paymentech, LP*, 296 S.W.3d 354, 357 (Tex. App.—Dallas 2009, pet. dism'd); *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 723 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.).

For "[a]ctions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, [or] for recovery of damages to real property," mandatory venue lies in the county in which all or a part of the property is located. TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Because of its mandatory nature, we strictly construe § 15.011 and will not hold that it applies unless the suit is clearly within one of the categories set out in the statute. *In re Signorelli Co.*, 446 S.W.3d 470, 474 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Cartwright v. Cologne Prod. Co.*, 182 S.W.3d 438, 448 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). If a mandatory venue provision applies to any claims or causes of action, then all claims and causes of action arising from the same transaction must be brought in the county of mandatory venue. TEX. CIV. PRAC. & REM. CODE ANN. § 15.004.

Though the first clause of the statute, by its plain language, encompasses only suits "for recovery" of interests in real property, it and its predecessor have been broadly construed by courts to include any suit where the "essence" or "substance" of the dispute "involves" an interest in real property. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding); *In re Kerr*, 293 S.W.3d 353, 358 (Tex. App.—Beaumont 2009, no pet.) ("When the underlying issue that a plaintiff must prove to show its entitlement to damages involves proof of the ownership rights to mineral interests, section 15.011 applies."); *Madera Prod. Co. v. Atl. Richfield Co.*, 107 S.W.3d 652, 659 (Tex. App.—Texarkana 2003, pet. denied) (noting that the real property

6

mandatory venue statute has been construed to apply "more broadly than [only] to actions ultimately seeking title or to clear title to real property" and listing cases).

To determine the "essence" or "substance" of the dispute, we look to the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought." *In re Hardwick*, 426 S.W.3d 151, 161 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding) (citing *Brown v. Gulf Television Co.*, 306 S.W.2d 706, 708 (Tex. 1957)). The "ultimate or dominant purpose" of a suit determines whether that particular suit falls under the mandatory venue statute and not "how the cause of action is described by the parties." *In re City Nat'l Bank*, 257 S.W.3d 452, 454 (Tex. App.—Tyler 2008, orig. proceeding). Once it is demonstrated that the court's judgment would have "some effect on an interest in real property," the venue of the suit is properly fixed under § 15.011. *In re Hardwick*, 426 S.W.3d at 161.[4]

"All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party." TEX. R. CIV. P. 87(3)(a). "When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact." *Id*. "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id*. "In the event that the parties shall fail to make prima facie proof that the county of suit or the specific county to which transfer is sought is a county of proper venue, then the court may direct the parties to make further proof." TEX. R. CIV. P. 87(3)(d).

---

[4] The Texas Supreme Court has observed that § 15.011 has been modified by the Legislature to include an additional reference to actions for an "interest" in real property, which "suggests that the Legislature intended [§] 15.011 to be more inclusive regarding the types of real property suits subject to mandatory venue." *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 118 (Tex. 2006) (orig. proceeding).

## C.    Waiver

We first address Gulf's contention that Eastman waived its venue motion by failing to diligently request a setting on its motion and by seeking relief from the trial court relating to discovery matters.  Gulf notes that Eastman first filed its motion to transfer with its original answer on August 23, 2013.  The amended motion to transfer was filed nearly four years later, on July 18, 2017, and the hearing on the amended motion was held on December 7, 2017.  Gulf argues that the "delay of over four years" shows a lack of diligence on the part of Eastman, justifying the trial court's denial of the motion.  Gulf further contends that Eastman waived its motion because it "request[ed] affirmative relief from [the trial court] on over a dozen occasions" during the discovery process.[5]

Texas Rule of Civil Procedure 87(1) states that "[t]he determination of a motion to transfer venue shall be made promptly by the court and such determination must be made in a reasonable time prior to commencement of the trial on the merits."  TEX. R. CIV. P. 87(1).  The party moving for a change of venue "has the duty to request a setting on the motion to transfer."  *Id.*

A party may waive venue rights by clear, overt acts evidencing an intent to waive, or by taking some action inconsistent with an intent to pursue the venue motion.  *Carlile v. RLS Legal Sols., Inc.*, 138 S.W.3d 403, 408 (Tex. App.—Houston [14th Dist.] 2004, no

---

[5] Gulf represents that Eastman filed the following motions with the trial court between May 20, 2014 and July 18, 2016:  (1) a motion to quash deposition notices; (2) a motion to compel discovery responses; (3) a motion to compel deposition and for sanctions; (4) a motion to compel and to reconvene deposition and for sanctions; (5) a supplemental motion to compel deposition and for sanctions; (6) a second motion to compel discovery; (7) a motion for entry of protective order; (8) a motion for order to appear and show cause; (9) a motion to appoint a discovery master; (10) an omnibus motion to compel discovery responses; (11) a motion to compel responses to depositions by written questions, to produce documents responsive to subpoena, and to produce a privilege log; (12) a second motion to compel responses to depositions by written questions and to produce documents responsive to subpoena; and (13) a "Motion for Entry of Further Order in Connection with Amended Order of June 6, 2016."

pet.). When a movant seeks relief that is ancillary to the merits or inherently preliminary, courts are reluctant to find waiver. *Smith v. Smith*, 541 S.W.3d 251, 257 (Tex. App.—Houston [14th Dist.] 2017, no pet.). But "if the movant seeks relief that invokes the general jurisdiction of the court to rule on the merits of the parties' claims," waiver may be found. *Id.*; *see Carlile,* 138 S.W.3d at 408 ("A movant may urge a preliminary motion without waiving venue objections, provided the motion does not involve a hearing on the merits."); *Gentry v. Tucker*, 891 S.W.2d 766, 768 (Tex. App.—Texarkana 1995, no writ) ("The motion [to transfer] will be waived if the defendant who is filing it, without first insisting upon its disposition, tries the case on the merits."); *Grozier v. L-B Sprinkler & Plumbing Repair*, 744 S.W.2d 306, 310 (Tex. App.—Fort Worth 1988, writ denied) ("[I]nconsistent action resulting in waiver is one which invokes the general jurisdiction of the court without reservation of rights asserted by the filing of the plea of privilege.").

Gulf cites *Cliff Jones, Inc. v. Ledbetter*, 896 S.W.2d 417, 419 (Tex. App.—Houston [1st Dist.] 1995, no writ), and *Whitworth v. Kuhn*, 734 S.W.2d 108, 111 (Tex. App.—Austin 1987, no writ). In *Ledbetter*, the defendant "did not pursue the [venue] matter to a clear ruling prior to trial" and did not make an "active effort . . . to obtain a ruling until seven months after the trial was completed"; moreover, the record contained no order denying the motion to transfer. 896 S.W.2d at 419. In *Whitworth*, the defendant "waited more than a year after filing his motion to transfer venue before requesting a hearing on the motion." 734 S.W.2d at 111. The Austin court of appeals remarked that the defendant's "complete lack of diligence is inconsistent with the purpose of Rule 87(1), and the trial court could have refused his motion on that basis." *Id.* The court then held that, in any event, the claim made in the defendant's motion was "insufficient to defeat venue and require transfer." *Id.* Gulf also cites *Carlile*, 138 S.W.3d at 408 (holding that defendant

9

waived transfer motion by waiting "approximately fourteen months" to request a hearing and by filing summary judgment pleadings prior to the hearing) and *Bristol v. Placid Oil Co.*, 74 S.W.3d 156, 160 (Tex. App.—Amarillo 2002, no pet.) (stating that, although "it may be that delay in obtaining a hearing provides grounds for the trial court to deny a motion to transfer, . . . such a delay does not mean that the trial court *must* deny it").

We disagree that waiver could have justified the trial court's ruling in this case. Rule 87(1) provides that a movant for transfer has a duty to request a setting on the motion, but it does not state that the request must be made within any particular time, except to say that the court must rule on the motion within "a reasonable time" prior to trial. TEX. R. CIV. P. 87(1). Further, the cases cited by Gulf are not persuasive on this point. In *Ledbetter*, the defendant waived its transfer motion because it did not seek a ruling on it until seven months after the trial was completed; here, the case has not even been set for trial.[6] *See* 896 S.W.2d at 419. The *Whitworth* court remarked that waiver would have justified the trial court's denial of the transfer motion, but that was dicta because its ruling affirming the denial was based on the merits of the transfer motion. *See* 734 S.W.2d at 111. The court in *Carlile* affirmed the trial court's denial of a transfer motion where the defendant waited "approximately fourteen months" to request a hearing and "was perhaps less than diligent" in pursuing a ruling on the transfer motion. 138 S.W.3d at 408–09. But the court's ruling was also based on the fact that the defendant filed summary judgment pleadings and a motion for continuance which were not conditioned upon his venue motion. *Id.*

Here, unlike in *Carlile*, Eastman did not file any pleadings seeking to "invoke[] the

---

[6] Eastman represents in its brief that Gulf has not yet asked to set the case for trial and that the case is not presently on the court's trial docket.

general jurisdiction of the court to rule on the merits" of the Gulf's claims. Instead, to the extent Eastman sought affirmative relief from the trial court, that relief related exclusively to discovery matters which, by their very nature, are preliminary to consideration of the claims on their merits. Further, even though Eastman's original transfer motion was filed in 2013, its amended motion was filed in 2017, and it requested a hearing on the amended motion shortly after it was filed. Under these circumstances, we conclude that Eastman did not waive its venue complaint.

**D. Analysis**

In its original motion to transfer, Eastman specifically and explicitly denied the venue facts pleaded by Gulf. Nevertheless, Gulf did not produce prima facie evidence of its venue facts prior to the hearing on the motion. Gulf therefore did not meet its burden under Rule 87(1) at the time of the hearing. *See* TEX. R. CIV. P. 87(1). With leave of court, Gulf later submitted affidavits establishing its venue facts.

Eastman contends in part that, because it provided prima facie proof with its amended motion to transfer that venue was proper in Galveston County, the trial court was without authority to allow further venue proof after the hearing under Rule 87(3)(d). Under that rule, the court may allow further proof only in a situation where *both* parties "fail to make prima facie proof that the county of suit or the specific county to which transfer is sought is a county of proper venue." TEX. R. CIV. P. 87(3)(d). But in its petition for writ of mandamus, Eastman does not direct us to any part of the record containing prima facie proof of proper venue in Galveston County.[7] *See* TEX. R. APP. P. 38.1(i).

---

[7] In the statement of facts section of its petition, Eastman states that its amended motion to transfer "include[d] some of the discovery product as venue evidence," and it cites the entire amended motion to transfer. However, Eastman does not direct us to any particular part of the amended motion—which comprises 159 pages including exhibits—and it does not identify or describe any of the evidence.

In the argument section of its petition, Eastman states that it provided "probative evidence that

11

Accordingly, we overrule Eastman's second issue, and proceed to consider the merits of the trial court's venue ruling.

In its venue motion, Eastman argued that Gulf's claims "involve" an "interest" in real property because they arise from an alleged agreement which would have, in part, provided Gulf with the right to operate the deep waste injection wells at the Texas City plant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Eastman notes that, in the section of Gulf's live petition asserting its breach of contract action, Gulf alleged that "[Gulf] and Eastman were parties to a contract that Eastman breached through its actions in failing to transfer the deep waste injection wells." In the promissory estoppel section of its live petition, Gulf alleged that it "relied on Eastman's promise to its detriment and missed the opportunity to bid on Sterling," and it asserted that "[i]njustice can be avoided only by the enforcement of the promise and contract." Eastman further points to notes from an October 3, 2011 meeting, which it submitted as evidence, in which Berry stated that the deal at issue concerned Eastman "sell[ing] the waste injection wells" to him for Gulf to reopen and operate.

We agree with Eastman that the mandatory venue statute applies to Gulf's suit. According to the venue evidence, Gulf's claims are premised in part on the existence of an agreement which would have, among other things, entitled Gulf to use and operate facilities at the Texas City plant. Thus, the alleged agreement involved an interest in real property. Gulf appears to concede this point by arguing, in its petition, that Eastman breached the alleged oral agreement in part by "failing to transfer the deep waste injection

---

venue is proper (indeed mandatory) in Galveston County," but it cites only a single page from a transcript of a hearing on July 22, 2016 regarding discovery matters. That page contains no testimony, but rather consists entirely of argument by the parties' attorneys and remarks by the trial court. It does not constitute prima facie proof that venue is proper in Galveston County.

12

wells." And although the prayer for relief in Gulf's live petition did not list specific performance of the alleged oral agreement as one of the remedies sought, the promissory estoppel section of Gulf's live petition appeared to request "enforcement of the promise and contract."[8] Accordingly, a final judgment in Gulf's favor may have "some effect on an interest in real property." *See In re Hardwick*, 426 S.W.3d at 161.

The disclaimer contained in Gulf's live petition does not change this result. The Texarkana Court of Appeals' opinion in *Madera Production Co. v. Atlantic Richfield Co.* is instructive. There, the plaintiff's live petition explicitly stated that it was not seeking a declaration on "any issues of title or ownership to real property." 107 S.W.3d at 658–59. The court nevertheless held that the mandatory venue statute applied because the plaintiff alleged facts indicating that it owned a mineral interest in certain property, and its damages claims were "base[d]" on that ownership. *See id.* at 659, 660. Here, Gulf has alleged that it had an enforceable agreement under which it would be entitled to use the injection wells at the Texas City plant. A purchaser under a contract of sale for real property acquires an equitable interest in the property. *Cadle Co. v. Harvey*, 46 S.W.3d 282, 287 (Tex. App.—Fort Worth 2001, pet. denied); *see Leeson v. City of Houston*, 243 S.W. 485, 488 (Tex. Comm'n App. 1922, judgm't adopted) ("Since equity regards that as done which ought to be done, the rule is well established that where a valid, and therefore enforceable, contract for the sale of land has been made, the land becomes the property of the vendee from the execution of the contract."). Thus, as in *Madera*, Gulf has alleged facts indicating that it owned an "interest" in the property, and its claim for damages was based on that interest. *See Madera*, 107 S.W.3d at 658; *see also Prosperity Energy*

---

[8] Moreover, the prayer for relief asked for "all other and further relief, at law, or in equity, to which [Gulf] may be reasonably entitled."

13

*Corp. v. Terfam Family, Ltd.*, No. 13-15-00184-CV, 2015 WL 3946553, at *7 (Tex. App.—Corpus Christi–Edinburg June 29, 2015, orig. proceeding) (mem. op.) (holding that mandatory venue statute applied, even though the plaintiffs' live petition "expressly disavowed any intention of seeking an interest in real property," because the evidence showed that the plaintiffs claimed equitable ownership, and "[s]uits pertaining to equitable title in land entail mandatory venue based on that land").

At least one of the claims made in Gulf's live petition was an action "for the recovery of" an "interest in real property." Accordingly, the trial court abused its discretion by failing to grant Eastman's motion to transfer the entirety of Gulf's suit to the county where the property at issue is located. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.004, 15.011. We sustain Eastman's first issue.

## III. CONCLUSION

Having fully considered Eastman's petition for writ of mandamus, Gulf's response, Eastman's reply, and the record provided by the parties, we conclude that Eastman has shown itself entitled to the relief sought. Accordingly, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order denying Eastman's motion to transfer, to grant the motion, and to transfer the case to Galveston County. The writ will issue only if the trial court fails to comply.

DORI CONTRERAS
Chief Justice

Delivered and filed the
20th day of June, 2019.