**CONDITIONALLY GRANT and Opinion Filed May 12, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-20-00833-CV

---

## IN RE PATRICIA STEPHENS, INDIVIDUALLY AND AS TRUSTEE OF THE WALTER H. STEPHENS TRUST, THE SSH TRUST, THE SUTTON ELIZABETH STEPHENS TRUST, AND THE HEATHER LOVE STEPHENS IRREVOCABLE TRUST, AND PATCO ENERGY, LTD., Relators

---

### Original Proceeding from the 160th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-20-03406

---

## MEMORANDUM OPINION
Before Justices Osborne, Reichek, and Smith
Opinion by Justice Osborne

In this original proceeding, relator Patricia Love Stephens, Individually and as Trustee of the Walter H. Stephens Trust, the SSH Trust, the Sutton Elizabeth Stephens Trust, and the Heather Love Stephens Irrevocable Trust (collectively, the Stephens Parties) and relator Patco Energy, Ltd. (Patco) complain of the trial court's order denying their motion to transfer venue. They contend venue is mandatory in Reagan County under § 15.011 of the Texas Civil Practice and Remedies Code because real parties in interest's claims for an accounting and declaratory judgment

require adjudication of ownership rights to mineral interests located in Reagan County.

We requested a response from real parties Frank and Michael Cass (together, Real Parties) and respondent.[1] Real Parties contend, *inter alia*, the motion was mooted by their amending their pleading to drop their claims to quiet title, for injunctive relief, and for the return of wrongfully taken property. After reviewing the petition, response, reply, and mandamus record, we conclude (1) Real Parties' suit fits within § 15.011 because it requires the adjudication of ownership rights to mineral interests and, thus, will have an effect on an interest in land and (2) the record evidences the mineral interests as being located, in part, in Reagan County but not in Dallas County. Venue is, therefore, governed by § 15.011, and the trial court clearly abused its discretion by denying the motion to transfer venue to Reagan County. We conditionally grant the writ.

## BACKGROUND

The following facts are supported by the mandamus record.

**A.    The Stephens Parties obtained a judgment against Real Parties in Reagan County and executed on that judgment pending Real Parties' appeal.**

In 1997, the Stephens Parties obtained a multi-million-dollar judgment, which included significant punitive-damages awards, against Real Parties in state court in

---

[1] Respondent is the Honorable Aiesha Redmond, Judge of 160th Judicial District Court, Dallas County, Texas.

–2–

Reagan County (the Reagan County Judgment).[2]  In 1999, while Real Parties' appeal was pending, the Stephens Parties executed on the Reagan County Judgment by obtaining a turnover order in the 160th Judicial District Court of Dallas County (the 160th District Court) in Cause No. 98-04140, styled *Patricia Love Stephens v. Frank W. Cass et al.* (the First Turnover Suit).  The turnover order ordered Frank to turnover and assign to a Dallas County constable certain mineral interests in which Frank owned or claimed an interest (the 1999 Dallas Turnover Order).

In 1999, in purported compliance with the 1999 Dallas Turnover Order, Frank executed an Assignment, Bill of Sale and Conveyance (the Assignment) wherein he assigned to a Dallas County constable certain "oil, gas, and other mineral properties, rights and interest" (the Mineral Interests).[3]  The constable held a sale where, according to Real Parties, the Stephens Parties or their affiliates purchased the Mineral Interests with a $25,000 credit bid applied against the Reagan County Judgment (the Sale).[4]

---

[2] The Reagan County Judgment awarded the Stephens Parties, *inter alia*, various sums against Frank and Michael for damages and pre-judgment interest; several million dollars in punitive damages against Frank and Michael each individually; significant monetary sanctions against Frank for discovery abuse; attorney's fees; and post-judgment interest.

[3] The Assignment in the mandamus record appears to be missing page 2.  Relators' attorney verified Relators' appendix as including true and correct copies of documents filed in the underlying proceeding that are material to the petition, indicating the Assignment was also filed in the trial court without page 2. *See* TEX. R. APP. P. 52.7(a)(1).  Real Parties rely upon Relators' appendix in their response to the petition for writ of mandamus.  *See* TEX. R. APP. P. 52.7(b).  We conclude the mandamus record is sufficient for purposes of this petition.

[4] Real Parties have alleged that the Stephens Parties or their affiliates acquired the Mineral Interests at the Sale; Relators have stated that "Plaintiff Stephens" acquired the Mineral Interests.  Evidence of the transfer from the constable to the purchaser at the Sale is not in the record.  A dispute, if any, about who acquired the properties, however, is not material to the disposition of this original proceeding; we express no opinion on who acquired the Mineral Interests at the Sale.

In 2001, the El Paso Court of Appeals affirmed the Reagan County Judgment. *See Cass v. Stephens*, No. 08-97-00582-CV, 2001 WL 28092 (Tex. App.—El Paso Jan. 11, 2001), *vacated by*, 538 U.S. 1054 (2003). Real Parties subsequently filed a petition for a writ of certiorari with the United States Supreme Court.

Meanwhile, the Stephens Parties filed a second turnover proceeding in the 160th District Court in Cause No. 02-6408-H, styled *Patricia Love Stephens et al. v. Frank W. Cass* (the Second Turnover Suit). In 2002, the 160th District Court denied that application without stating the grounds for its ruling (the 2002 Order Denying Turnover Relief).

The United States Supreme Court granted certiorari and, in 2003, issued a decision vacating the El Paso Court of Appeals' judgment and remanding the case back to the El Paso Court of Appeals for further consideration in light of *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)[5] (the Supreme Court's Order).[6] *See Cass v. Stephens*, 538 U.S. 1054 (2003).

The following month, Frank filed in the First Turnover Suit a Motion to Dissolve Turnover Orders and for Return of Property Previously Turned Over. The 160th District Court denied that motion for lack of jurisdiction in July 2003.

---

[5] In *Campbell*, the United States Supreme Court held an award of $145 million in punitive damages on $1 million in compensatory damages violated the Due Process Clause of the Fourteenth Amendment. *See* 538 U.S. at 419–29.

[6] As discussed below, Real Parties contend in the suit underlying this proceeding the Supreme Court's Order vacated the Reagan County Judgment. We express no opinion on the merits of Real Parties' position.

On remand in 2004, the El Paso Court of Appeals issued an opinion wherein it reformed the Reagan County Judgment to provide for substantially lesser amounts of punitive damages but otherwise affirmed the Reagan County Judgment, as reformed, and signed a judgment accordingly (the Reformed Judgment).[7] *See Cass v. Stephens*, 156 S.W.3d 38, 79 (Tex. App.—El Paso 2004, pet. denied), *cert. denied*, 552 U.S. 819 (2007). Real Parties' subsequent appeals were unsuccessful, and the El Paso Court of Appeals issued its mandate on the Reformed Judgment on April 10, 2007 (the 2007 Mandate).

**B.      The Stephens Parties purportedly assigned the Reagan County Judgment to Patco.**

In 2016, the Stephens Parties purportedly executed an Assignment of Judgment Liens, wherein, Real Parties contend, the Stephens Parties assigned "the Reagan County Judgment and/or the [Reformed] Judgment" to Patco. Patco, in turn, purportedly executed, *inter alia*, a Partial Assignment of Judgment and Judgment Liens, wherein, Real Parties contend, Patco assigned "a portion of the Reagan County Judgment and/or the [Reformed Judgment]" to Ferae Naturae, LLC (Ferae).[8]

In early 2020, Ferae filed suit in state court in Reagan County in Cause No. CV02302, styled *Ferae Naturae, LLC v. Arroyo Minerals, LLC, et al.* (the Ferae

---

[7] The Reformed Judgment reduced the multi-million-dollar-punitive-damage awards by providing for the following punitive damages: "$300,000 against Frank Cass, and $300,000 against Frank Cass and Michael Cass."

[8] We express no opinion about the identities of the parties to any purported assignment referenced in the mandamus record, nor do we express any opinion on the scope of any such assignment.

Suit).  Ferae sought judicial foreclosure of a purported judgment lien against an oil

and gas lease located in Reagan County (the Branch Lease).  Mary Cass and Oli

Cass, who are defendants in the Ferae Suit, are Frank's and Michael's wives.[9]

**C.     Real Parties filed the underlying suit based on a theory that Frank Cass never lost title to the Mineral Interests in 1999, and, thus, any proceeds Relators have received from such properties should be applied against the Judgments.**[10]

**1.     Real Parties' original petition**

The month after Ferae filed suit, Real Parties filed the suit underlying this

original proceeding against Relators in the 160th District Court.[11]  Real Parties'

essential contention was that the Supreme Court's Order vacated the Reagan County

Judgment, "making [the Reagan County Judgment] null and void and of no

consequence."  Real Parties alleged that because the now-void Reagan County

Judgment had supported issuance of the 1999 Dallas Turnover Order, that turnover

order also "became null and void, as if it never existed," and the resulting Sale also

became "null and void."  Thus, Real Parties alleged, "title to those properties [sold

---

[9] The defendants in the Ferae Suit (the Ferae Defendants) purportedly brought third-party claims against the Stephens Parties and Patco (together, Relators) for an accounting/receivership, declaratory judgment, and removal of cloud on title; these claims were purportedly based upon an assertion by the Ferae Defendants that "royalty proceeds received by Stephens after her purchase of certain assets previously belonging to [Frank and Michael] at a court-ordered constable's sale should . . . be credited against the outstanding amount of the Reformed Final Judgment."

[10] In their pleadings in the trial court, Real Parties refer to the Reagan County Judgment and the Reformed Judgment as two "Judgments."  They take a similar position in this original proceeding.  We express no opinion on whether the Reagan County Judgment and Reformed Judgment are two distinct judgments; we merely adopt Real Parties' use of "Judgments" to describe Real Parties' position.

[11] Ferae subsequently nonsuited without prejudice Mary and Oli.

at the Sale] has always remained in Frank's name, and he is the rightful owner of those properties today."

According to Real Parties, "[a]ll of the proceeds from those properties that were paid to [Relators] belong to Frank, and all future proceeds from those properties in [the] Sale belong to Frank." They alleged, "[E]very dollar that the [Stephens Parties] received from *Frank's properties* pursuant to the void . . . Sale, from October 1999 to April 10, 2007 [the date of the 2007 Mandate] was a credit on the [Reformed] Judgment."[12] (Emphasis added.) Likewise, they alleged that "any proceeds received by the [Stephens Parties] since April 10, 2007 should also be applied to the [Reformed] Judgment."

Real Parties further alleged generally that "all proceeds from *any property of Frank's* from October 1999 to the present should be applied as a credit to the [Reformed] Judgment," which they alleged is "the only valid judgment." (Emphasis added.) Those proceeds, they alleged, "were to be applied, dollar for dollar, to the Judgments," and when such credits are applied, the "Judgments have been paid in full, or a relatively small amount is owed."[13]

---

[12] Real Parties also alleged that when they are given credit for the proceeds Relators received between October 1999 and the date of the 2007 Mandate, the Reformed Judgment had been paid in full by that date. If anything was left owing by that date, then, they alleged, it was only on this smaller amount that post-judgment interest should have been calculated; and they alleged that post-judgment interest should have been calculated from the date of the 2007 Mandate.

[13] Real Parties also requested credit for unspecified personal property the constable allegedly took from Frank's home when executing the 1999 Dallas Turnover Order and for consideration paid to Relators in connection with their assignments of the Judgments to third parties.

Based on the above, Real Parties requested (1) an accounting and appointment of a receiver; (2) a declaratory judgment Real Parties have fully satisfied the Judgments; (3) removal of the cloud on title posed by Relators' abstracts of judgment and writs of execution, and a permanent injunction enjoining Relators and their assignees from filing any further abstracts of judgment or writs of execution; (4) an order requiring the return of wrongfully taken property, and the imposition of a constructive trust; (5) a declaratory judgment that any assignments of judgment liens are void or have no value; and (6) damages and punitive damages for tortious interference, conversion, and abuse of process.

Real Parties alleged venue was proper in Dallas County for three reasons: all or part of the causes of action accrued, in whole or in part, in Dallas County; the matter required interpretation of Dallas County district court orders; and "the Defendants and one Plaintiff" were Dallas County residents.

## 2. Relators' motion to transfer venue

Relators filed a motion to transfer venue, objecting to suit in Dallas County and requesting transfer to Reagan County.[14] Relators argued, *inter alia*, venue is

---

[14] In the same pleading, Relators also filed, subject to their motion to transfer venue, a plea in abatement; they argued the first-filed Ferae Suit had dominant jurisdiction and Ferae is a necessary party whom Real Parties needed to join in the suit. The trial court denied the plea in abatement in the order denying the venue-transfer motion. Relators mention the ruling on their plea only once in their petition: "The trial court committed error in denying the Motion to Transfer Venue. Alternatively, the Court below should have abated this cause in favor o[f] the pre-existing action filed in Reagan County, because of the interrelated subject matter of the two cases." We need not address Relators' alternative argument regarding the plea-in-abatement ruling, assuming it was adequately briefed, in light of our conclusion the trial court clearly abused its discretion by denying the venue-transfer motion. *See* TEX. R. APP. P. 47.1, 52.8(d).

–8–

mandatory in Reagan County under § 15.011 of the Texas Civil Practice and Remedies Code because that "is where the real property is located that is subject to [Real Parties'] . . . request to 'recover' and/or 'quiet title' to such real property." Relators also contended venue is mandatory in Reagan County under §§ 15.013 and 65.023(b) of the Texas Civil Practice and Remedies Code.[15]

### 3. Real Parties' amended petition and response to the motion to transfer venue

In apparent response to the motion, Real Parties filed an amended petition that omitted claims and requests for relief explicitly asking the court to quiet title to any real property, injunctive relief as to further enforcement of the Judgments, or for an order requiring the return of any "wrongfully taken" property. The amended petition, however, left entirely intact the substance of the original petition's factual allegations and remaining claims—changing none of the above-quoted allegations from the original petition.[16] The amended petition also did not amend Real Parties' venue allegations, except it added a reference to an affidavit executed by Frank, which Real Parties attached to their amended petition.

---

[15] It is not necessary to address the parties' arguments regarding §§ 15.013 and 65.023(b) in light of our conclusion venue is mandatory in Reagan County under § 15.011. *See* TEX. R. APP. P. 47.1, 52.8(d).

[16] The amended petition added allegations that (1) the Stephens Parties were paid on unspecified properties of Frank's that were not the subject of the 1999 Dallas Turnover Order, and Relators never gave Real Parties credit for these monies either; (2) any writs of execution or abstracts of judgment filed after the date of the Reformed Judgment were dormant; and (3) the 2002 Order Denying Turnover Relief constitutes res judicata that the "Judgment" has been paid in full.

Real Parties also filed a response to the venue-transfer motion. Among other things, they argued their amended petition rendered the motion moot and venue was both mandatory and permissive in Dallas County.

### 4. The trial court's ruling

Relators filed a reply in support of their venue-transfer motion, arguing, *inter alia*, the core of the claims and ultimate relief sought by Real Parties in their amended petition remained the same and still required adjudication of ownership of real property interests located in Reagan County and not Dallas County. Relators also argued there was no allegation or evidence supporting mandatory venue in Dallas County.

Real Parties filed a reply to Relators' reply,[17] and the trial court held a hearing and denied the motion to transfer venue. Relators then brought this original proceeding.

## AVAILABILITY OF MANDAMUS RELIEF

"A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of [Chapter 15 of the Texas Civil Practice and

---

[17] The parties dispute whether the amended petition requests the imposition of a constructive trust. The amended petition dropped the claim for the return of wrongfully taken property and the imposition of a constructive trust but continued to request generally the imposition of a constructive trust "as set forth above" in the prayer for relief. Real Parties argued in their reply that they had inadvertently left in the request for a constructive trust in their prayer for relief. However, Real Parties filed their reply seven days prior to the hearing on the venue-transfer motion without amending their petition to correct their purported mistake. Regardless, in light of our conclusion venue is mandatory in Reagan County without reference to the amended petition's prayer for a constructive trust, a determination of whether Real Parties continue to request the imposition of a constructive trust is not necessary for the disposition of this original proceeding.

–10–

Remedies Code]." TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642. In mandatory-venue cases, we look only to whether the trial court clearly abused its discretion when ruling upon the motion. *See In re Fox River Real Estate Holdings, Inc.*, 596 S.W.3d 759, 763 (Tex. 2020) (orig. proceeding). Trial courts have no discretion in determining what the law is or in the application of the law to the facts. *Id.*

### MANDATORY VENUE UNDER § 15.011

Section 15.011 states,

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Section 15.011 is a mandatory-venue provision. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding).

Relators must demonstrate two venue facts were established in order to show venue is mandatory in Reagan County under § 15.011: (1) the nature of the instant suit fits within those listed in § 15.011 and (2) "all or a part" of the realty at issue is located in Reagan County. *See Airvantage, L.L.C. v. TBAN Props. # 1, L.T.D.*, 269 S.W.3d 254, 258 (Tex. App.—Dallas 2008, no pet.); *see also* TEX. R. CIV. P. 87(2)(a). Relators met their burden.

–11–

## A. The nature of Real Parties' suit fits within § 15.011.

Relators argue the action is governed by § 15.011 because Real Parties' claims for an accounting, declaratory judgment, and conversion are based upon Real Parties' theory that Frank is the rightful owner of the Mineral Interests, which are real property interests located in Reagan County. Thus, Relators contend, adjudication of the ownership of the Mineral Interests is a necessary predicate to Real Parties' claims, and venue is mandatory in Reagan County under § 15.011.

Real Parties argue no mandatory-venue provision is applicable. They contend they are simply seeking an accounting of what monies have been paid on the Judgments and a declaratory judgment that the Judgments have been paid or declaring what amount is still owed. That, they argue, "is the crux and the 'true nature' of the trial court proceedings from which this mandamus arises." Real Parties contend their claims "have ***nothing to do with a determination of who is in title to property in Reagan County***," arguing their amended petition "does not state any cause of action, or request any relief, that would require the trial court to make any determination of ownership of real property located in Reagan County" and does not "request[] determination of ownership of property in Reagan County." We reject Real Parties' arguments, which place form over substance, and agree with Relators.

1. **To determine venue, we review the substance of the factual allegations, rights asserted, and relief sought in the last timely filed pleading, not how the parties describe their claims.**

To determine whether the suit fits within those listed in § 15.011, we examine the last pleading that was timely filed. *In re Hardwick*, 426 S.W.3d 151, 157 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). A party may freely amend its pleadings at least seven days prior to a hearing on a motion to transfer venue. *See Galindo v. Garner*, No. 05-19-00061-CV, 2019 WL 2098689, at *4 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.); *see also* TEX. R. CIV. P. 63. Here, Real Parties' amended petition, filed several weeks before the hearing on Relators' motion, is the operative pleading.

The "mandatory venue provisions may not be evaded merely by artful pleading." *In re Kerr*, 293 S.W.3d 353, 358 (Tex. App.—Beaumont 2009, orig. proceeding) (per curiam). A court is required to "determine the venue of a suit based on the facts existing at the time the cause of action that is the basis of the suit accrued." *Id*. at 358–59 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 15.006). Venue is determined "by the substance of the claim, not its form." *Id.* at 356. How the parties described a cause of action is not decisive. *Id*. at 360; *see also Airvantage*, 269 S.W.3d at 258.

The "true nature of the lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought." *Airvantage*, 269 S.W.3d at 258. The "ultimate or dominant purpose of a suit" determines whether it falls under the

–13–

mandatory-venue statute. *Id.* "[N]o special distinctions are made for real property suits simply because they are couched in terms of a declaratory judgment." *Id.* "Once it is demonstrated that the court's judgment would have some effect on an interest in land, then the venue of the suit is properly fixed under the mandatory venue statute [§ 15.011]." *Id.* at 259.

2. **Real Parties' suit fits within § 15.011 because their right to relief requires proving Frank's ownership rights to the Mineral Interests.**

As an initial matter, we note mineral interests are interests in real property. *In re Estate of Ethridge*, 594 S.W.3d 611, 616 (Tex. App.—Eastland 2019, no pet.). A right to future payments arising from mineral interests is an interest in land. *See Clyde v. Hamilton*, 414 S.W.2d 434, 439 (Tex. 1967). Claims for past and accrued proceeds from mineral interests, however, are claims to recover personal property. *See Ethridge*, 594 S.W.3d at 616 ("[M]inerals become personal property when severed or extracted from the land."); *In re Brin & Brin, P.C.*, No. 13-13-00324-CV, 2013 WL 3895365, at *5 (Tex. App.—Corpus Christi–Edinburg July 23, 2013, orig. proceeding) (mem. op.) (stating accrued royalties are interests in personal property).

Nonetheless, "[w]hen rightful ownership of real property must be decided as a prerequisite to the relief requested, the mandatory venue statute governs." *Kerr*, 293 S.W.3d at 360. Thus, "[a] suit over the ownership of proceeds from mineral interests must be filed in the county in which the real property is located even though the cause of action is for a declaratory judgment over monies." *Madera Prod. Co.*

–14–

*v. Atl. Richfield Co.*, 107 S.W.3d 652, 660 (Tex. App.—Texarkana 2003, pet. denied).

Just like the original petition, the principal theory of recovery alleged in Real Parties' amended petition is as follows: The Supreme Court's Order vacated the Reagan County Judgment, making the Reagan County Judgment null and void and of no consequence. As a result, the 1999 Dallas Turnover Order and subsequent Sale became null and void, as if they never existed, because the turnover order was supported by the now-void Reagan County Judgment. Thus, Real Parties assert, Frank owns, and has always owned, the rights to the Mineral Interests and is entitled to all past, present, and future[18] proceeds from the Mineral Interests. Consequently, Real Parties are, and have been since October 1999, entitled to a dollar-for-dollar credit against the Judgments for all proceeds Relators have received from "Frank's" Mineral Interests since the Sale in 1999.[19] Real Parties allege "Frank has been wrongfully without his property for almost 21 years."

In terms of the relief requested, Real Parties request an accounting of "all of the monies and proceeds received by any [Relator] that are related to any property

---

[18] The amended petition continues to allege Frank "is the rightful owner of those properties today" and "all future proceeds from those properties in that . . . Sale belong to Frank," although it omits the original petition's explicit request for an order "that all future proceeds from such properties belong to Frank."

[19] As noted above, Real Parties' amended petition alleges additional grounds for recovery, but their contention that Frank never lost title to the Mineral Interests and, thus, Real Parties are entitled to a credit for all proceeds Relators have received from the Mineral Interests is their principal theory of recovery. We further note that "[i]f a mandatory venue provision applies to any claims or cause of action, then all claims and causes of action arising from the same transaction must be brought in the county of mandatory venue." *See Airvantage*, 269 S.W.3d at 259 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 15.004). The other grounds for relief requested in the amended petition meet this test.

–15–

*owned by Frank*," from "October 1999 to the present and shall include all oil and gas and mineral properties *owned by Frank* or any properties that were the subject of the 1999 Dallas Turnover Order and the subsequent . . . Sale." (Emphases added.) Based on such accounting, Real Parties request declarations that the Judgments have been paid and that any judgment liens are void or at least have no value "since the Judgments at issue have been paid." They also seek damages and punitive damages for conversion, alleging, in relevant part, Relators "have wrongfully taken Plaintiffs' property and kept it, despite knowing the 1999 Dallas Turnover Order is void."

The ultimate or dominant purpose of the suit is to establish Frank never lost title to the Mineral Interests in 1999—despite the 1999 Dallas Turnover Order, the Assignment, and the Sale—because Real Parties want a credit against the Judgments for all proceeds Relators have received from the Mineral Interests since 1999. Real Parties' entitlement to any of their above-requested relief will stand or fall based, in large part, on whether the Supreme Court's Order rendered the 1999 Dallas Turnover Order, the Assignment, and/or the Sale null and void such that Frank remained the true owner of the Mineral Interests all along.[20] Real Parties' suit will have an effect on an interest in land because rightful ownership of the Mineral Interests, which are real property interests, must be decided as a prerequisite to their requested

---

[20] We express no opinion on the merits of Real Parties' claims and theories of recovery.

accounting, declaratory judgment, and damages for conversion. *See Airvantage*, 269 S.W.3d at 259.

It is apparent Real Parties amended their petition in an attempt to avoid the application of § 15.011. But such amendment did not change the nature or effect of this suit: if Real Parties prevail, the suit will render the Assignment and the Sale nullities; and it will render any claim by Relators to past, current, or future ownership of the Mineral Interests or to any past, present, or future proceeds from such interests likewise void. Real Parties' suit is tantamount to a suit to quiet title[21] and for the return of the Mineral Interests, despite Real Parties' artfully amending their pleading to couch it as a simple accounting and declaratory-judgment case. *See Applied Chem.*, 206 S.W.3d at 119 (holding real parties used declaratory-judgment mechanism as indirect means of quieting title to a mineral estate when essence of dispute was whether relator had a right to mine marble and, thus, had a mineral lease on plaintiff's land); *Hardwick*, 426 S.W.3d at 162 (holding action seeking forfeiture of assigned mineral interests and overriding royalty interests as a remedy was suit to recover real property interests subject to § 15.011); *Airvantage*, 269 S.W.3d at 259

---

[21] A "cloud" on legal title includes any deed, contract, judgment lien, or other instrument, not void on its face, that purports to convey an interest in or make any charge upon the land of the true owner, the invalidity of which would require proof. *Airvantage*, 269 S.W.3d at 258. "A suit to quiet title relies on the invalidity of the defendant's claim to the property." *Farkas v. Aurora Loan Servs., L.L.C.*, No. 05-15-01225-CV, 2017 WL 2334235, at *9 (Tex. App.—Dallas May 30, 2017, pet. denied) (mem. op.). To prevail in a suit to quiet title, a claimant must prove three elements: (1) he has an interest in a specific property; (2) title to the property is affected by a claim of the defendant; and (3) the defendant's claim, although facially valid, is invalid or unenforceable. *Id.* at *8. "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Suite 900, LLC v. Vega*, No. 02-19-00271-CV, 2020 WL 2608394, at *7 n.12 (Tex. App.—Fort Worth May 21, 2020, pet. denied) (mem. op.) (citation omitted).

–17–

(holding conversion and conspiracy claims premised on allegedly wrongful lis pendens required adjudication of validity of liens and, thus, affected an interest in land); *In re City Nat'l Bank*, 257 S.W.3d 452, 455 (Tex. App.—Tyler 2008, orig. proceeding) (holding suit requesting a permanent injunction to prevent foreclosure of deed of trust lien based on allegation lien was procured by fraud would render lien a nullity and, thus, was tantamount to a suit to remove an encumbrance from title and judgment sought would affect an interest in land).

Accordingly, based on our examination of the factual allegations, rights asserted, and relief requested in Real Parties' amended petition, we conclude Real Parties' suit will require adjudication of ownership rights to the Mineral Interests and, thus, will have an effect on an interest in land. *See Kerr*, 293 S.W.3d at 358 ("When the underlying issue that a plaintiff must prove to show its entitlement to damages involves proof of the ownership rights to mineral interests, section 15.011 applies."); *see also Brin & Brin*, 2013 WL 3895365, at *7 (holding § 15.011 controlled when resolution of plaintiff's claim to monies depended on rightful ownership of a royalty interest); *Kerr*, 293 S.W.3d at 359–60 (holding suit governed by § 15.011 when the "heart of the controversy" was plaintiff's assertion it had the right to develop mineral interests for its own benefit despite plaintiff's disclaimer of an attempt to recover land or damages based on future production from the mineral interests); *Madera*, 107 S.W.3d at 659–660 (holding suit fell within § 15.011 when plaintiff had to prove ownership rights in a mineral lease to recover damages, despite

–18–

plaintiff's amending its pleading to exclude issues of title or ownership to real property). Thus, the suit fits within § 15.011, and venue is mandatory in the county in which all or a part of the real property is located. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011.

### 3. Real parties' additional arguments as to why their suit does not fit within § 15.011 are not persuasive.

Real Parties assert a number of additional reasons why they contend their suit does not fit within § 15.011, but none are persuasive.

First, citing no authority, Real Parties argue the "factual background in the Amended Petition is the least significant" factor to consider when determining venue. But we must review factual allegations when making our venue determination. *See Airvantage*, 269 S.W.3d at 258. As Real Parties acknowledge, the factual background section "explain[s] the reasons why [they claim they] are entitled to the relief they seek." Here, that reason is because they intend to prove Frank currently owns, and has owned, the rights to the Mineral Interests.

Second, Real Parties argue at length that Relators erroneously focus on the original petition rather than the operative, amended pleading. They repeatedly accuse Relators of attempting to mislead this Court about the true nature of this case and of stating what they "wish the Amended Petition requested." But this Court's conclusion that Real Parties' suit fits within § 15.011 is based on the contents of the amended petition. Relators' references to the original petition demonstrate, as we

have also concluded, Real Parties' pleading amendment was an attempt to avoid the application of § 15.011.

Third, Real Parties cite *Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368 (Tex. 2001), to argue their claims for accounting and declaratory judgment do not require an adjudication of ownership of the real property in Reagan County because their claims "merely require the trial court to apply simple math to whatever amounts have been paid toward the Final Judgment and then issue a declaration as to what amount if any, is still owed on the Final Judgment." But *Yzaguirre* is distinguishable. There, the substance of the dispute concerned how to calculate royalties everyone agreed KCS Resources owed the owners. *Id.* at 369–71. The suit involved no dispute over the boundaries of the leases or the percentages of royalties. *Id.* at 371. Accordingly, the Supreme Court of Texas concluded § 15.011 did not apply because ownership of real property was not in dispute. *Id.*

Here, by contrast, there is a key dispute over whether Frank is the rightful owner of properties sold pursuant to the 1999 Dallas Turnover Order. Real Parties ignore that calculating the "amounts [that] have been paid toward the Final Judgment" first requires a determination as to who owns the Mineral Interests— because Real Parties seek an accounting of, and credit for, past proceeds from the Mineral Interests paid to Relators that Real Parties contend Frank should have received, despite the Assignment and the Sale. Thus, the lawsuit's outcome depends on determining Frank's interest in real property.

–20–

Fourth, Real Parties argue their conversion claim is merely a "tangential claim" that has "nothing to do with the 'true purpose' of this suit." They contend the claim is based on "personal property of Frank Cass taken from his Dallas County home, or other property not the subject of the 1999 [Dallas] Turnover Order." But when describing their claim for conversion in the amended petition, Real Parties incorporate by reference all preceding paragraphs "as if fully copied and set forth at length" and allege, "[Relators] have wrongfully taken Plaintiffs' property and kept it, *despite knowing the 1999 Dallas Turnover Order is void* and despite knowing they received proceeds from properties of Frank Cass that were not the subject of the 1999 Dallas Turnover Order." (Emphasis added.) The claim plainly encompasses Relators' alleged conversion of title to the Mineral Interests, even if the conversion claim is also based, in part, on their alleged conversion of other property.

Real Parties also cite no authority that supports their contention their claim for conversion is "tangential" or ancillary to any other claims such that the allegations asserted and relief requested in support of this claim cannot provide grounds for mandatory venue under § 15.011. *Cf. Fox River*, 596 S.W.3d at 765–66 ("[W]henever it can properly be said from the pleadings that the issuance of an injunction is merely ancillary to the primary relief sought, section 65.023(a) has no application.") (internal quotation marks and citation omitted); *In re Zidan*, No. 05-20-00595-CV, 2020 WL 4001134, at *4 (Tex. App.—Dallas July 15, 2020, orig.

–21–

proceeding) (mem. op.) (holding request for receiver was an ancillary request for relief that did not implicate mandatory-venue provisions). This claim requires a determination of who owns the Mineral Interests conveyed pursuant to the 1999 Dallas Turnover Order, and, thus, is properly considered when determining venue under § 15.011.

Fifth, Real Parties argue that at the hearing on the venue-transfer motion, their counsel informed the trial court (1) the amended petition "is devoid of any claim for an adjudication of title to real property" and (2) "if in the future, the Real Parties try to bring any claim for a determination of title to real property located in another county, the trial court is empowered to refuse to allow the Real Parties to do so."[22] These statements, they contend, are "clear evidence" there "is no claim for an adjudication of title to real property at issue." But counsel's argument is not evidence, and we have already concluded that, in substance, Real Parties do seek adjudication of ownership of real property in the underlying suit. *See Kerr*, 293 S.W.3d at 358.

Finally, Real Parties argue that cases like *Kerr* and *Madera*, cited by Relators, are distinguishable. *See Kerr*, 293 S.W.3d at 358–59; *Madera*, 107 S.W.3d at 659–

---

[22] On the page of the record cited by Real Parties, Real Parties' counsel stated,

The Court is well aware of the venue. I mean, the Court was well aware that we're not seeking injunctive relief or cloud on title removal or whatever, so the Court would not grant us that relief even if we sought it later. We're not seeking it. So he's got a built-in protection down the road if somehow he thinks that's what this lawsuit is really about because it's not. Because we're not seeking that relief.

60. Real Parties argue that in *Kerr*, "the plaintiff sought **entitlement to damages** and had to prove he had ownership rights in a mineral lease in order to recover [those] damages." They contend that in their suit, however, "Real Parties are not seeking damages, they are seeking an accounting and a declaratory judgment." But our analysis of the substance of a suit when determining venue includes reviewing claims seeking relief other than monetary damages, such as declaratory relief. *See Renwar Oil Corp. v. Lancaster*, 276 S.W.2d 774, 776 (Tex. 1955) (holding plaintiffs' request for adjudication that certain agreements conveying an interest in realty are void and ineffective to them constitutes an effort to remove cloud from title, even though plaintiffs alleged claim as a request to construe a contract). Real Parties wholly fail to explain how they will prove entitlement to their requested relief without first proving Frank's ownership of the Mineral Interests.

Similarly, Real Parties argue that in *Madera*, "the plaintiff sought a declaratory judgment **over monies,** which necessarily required a determination of ownership of the mineral interests." They contend that in their suit, "Real Parties simply want the accounting and a declaratory judgment and have made no claim they are entitled to the monies that would require a determination of who owns the real properties." But the premise of Real Parties' request for an accounting and declaratory judgment *is* their claim to ownership of the Mineral Interests and resulting entitlement to the proceeds from the Mineral Interests. The fact Real Parties ultimately seek an award of a credit against the Judgments in the form of

–23–

declaratory relief rather than monetary damages is not dispositive. Further, in their conversion claim, they do request "recover[y of] all damages from the conversion of their property," and, as discussed above, such property includes the Mineral Interests.

**B.  All or a part of the realty at issue is located in Reagan County.**

As to the second venue fact, there is no dispute that at least some of the Mineral Interests are located in part in Reagan County. This venue fact is readily established by the mandamus record. Relators included the Assignment and its attachments as an exhibit to their venue-transfer motion. These documents identify the Mineral Interests Frank assigned to the constable and show Reagan County (but not Dallas County) among the locations of the Mineral Interests. In Frank's own affidavit, which Real Parties attached to their amended petition and response to the venue-transfer motion, he testified that the properties subject to the 1999 Dallas Turnover Order include Mineral Interests located in Reagan County: "The properties listed in Exhibit 'A' to the 1999 [Dallas] Turnover Order are oil and gas properties located in numerous counties within the State of Texas," including "Reagan, Upton, Glasscock, Midland, Mitchell, Andrews, Ector, Ward, Gregg[,] and Harrison Counties."

Citing no authority, Real Parties argue that because Frank's affidavit shows the oil and gas properties at issue are located in numerous counties throughout the State of Texas, their suit would need to be brought in each such county, requiring

multiple lawsuits all over the state, including Dallas County. This argument ignores the plain language of § 15.011, which makes venue mandatory in a county where "all *or a part*" of the property at issue is located. TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (emphasis added). The statute makes clear that all the property need not be located within a single county to trigger the mandatory-venue requirement. Moreover, the mandatory-venue rules may designate multiple counties as proper. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018). The plaintiff makes the first choice of venue by filing suit; if the plaintiff files in a "proper" venue, that choice is honored absent a mandatory-venue statute requiring transfer. *See id*.

Real Parties are also not clear about why they contend they would need to bring suit in Dallas County. Real Parties cite nothing in the record demonstrating that any real property at issue affected by this suit is located, in whole or in part, in Dallas County, and we have found nothing. Although Real Parties argue they may seek the return of property taken from them in Dallas County, they base this argument on personal property the constable allegedly removed from Frank's home in Dallas County after issuance of the 1999 Dallas Turnover Order. Section 15.011, however, does not apply to personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011.

Accordingly, we conclude the mandamus record establishes that "all or a part" of the realty at issue is located in Reagan County. *See id.*; *Airvantage*, 269 S.W.3d at 258–59. Thus, transfer is mandatory to Reagan County under § 15.011.

**C.      Real Parties' additional arguments for mandatory or permissive venue in Dallas County are without merit.**

Real Parties raise a few global arguments as to why they contend their suit should remain in Dallas County. We address each argument in turn.

First, Real Parties argue Relators waived venue in Reagan County by bringing the two turnover lawsuits in Dallas County. They reason there is no mandatory-venue statute requiring venue in Reagan County and this case should be maintained in Dallas County for comity, consistency of rulings, and convenience of the parties and witnesses. They further contend Relators did not properly specifically deny Real Parties' venue allegations and, therefore, Real Parties were not required to offer prima facie proof of their venue facts, which should be accepted as true.

This argument is without merit. If a plaintiff's chosen venue rests on a permissive-venue statute and the defendant files a meritorious motion to transfer venue based on a mandatory-venue provision, the trial court must grant the motion. *See Brin & Brin*, 2013 WL 3895365, at *5. Relators properly objected to venue in Dallas County and asserted venue is mandatory in Reagan County under § 15.011. Because we conclude Relators met their burden to prove venue is mandatory in Reagan County, we need not address the merits of Real Parties' permissive-venue contentions. *See* TEX. R. CIV. P. 86(3)(b); *In re R.R. Repair & Maint., Inc.*, No. 05-

09-01035-CV, 2009 WL 3531636, at *5–6 (Tex. App.—Dallas Nov. 2, 2009, orig. proceeding) (mem. op.).

Second, Real Parties argue the 160th District Court is the only court that can interpret its prior orders and give them their intended meaning, claiming such authority is "tantamount to a mandatory venue provision." They also contend the Reagan County court's interpreting the 160th District Court's prior orders "would be an 'attack' on those orders."

Real Parties fail to explain how their suit requires an interpretation or enforcement of any order of the 160th District Court or how such orders would be "attacked" by the Reagan County court. Regardless, Real Parties' argument erroneously conflates the continuing jurisdiction of trial courts generally with venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1). Moreover, the underlying suit is not the same suit in which the 1999 Dallas Turnover Order or 2002 Order Denying Turnover Relief were obtained roughly twenty years ago. The trial court's plenary power in those suits has long since expired.[23] *See* TEX. R. CIV. P. 329b.

The only case Real Parties cite to support their position, *Butron v. Cantu*, 960 S.W.2d 91 (Tex. App.—Corpus Christi–Edinburg 1997, no writ), is inapposite. That case concerned §§ 65.013 and .023, which relate to suits for an injunction to stay execution of a judgment. *See id.* at 94–95; *see also* TEX. CIV. PRAC. & REM. CODE

_____

[23] In 2003, in the First Turnover Suit, the 160th District Court denied for lack of jurisdiction Frank's Motion to Dissolve Turnover Orders and for Return of Property Previously Turned Over, which he filed the month after the Supreme Court's Order was issued.

–27–

ANN. § 65.023(b) ("A writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered."). But nothing in the amended petition explicitly or implicitly seeks an injunction to stay *execution of a judgment* rendered by a court *in Dallas County*. Real Parties cite no other authority to support mandatory venue in Dallas County, and we have found none.[24]

## CONCLUSION

We conditionally grant the writ of mandamus and direct the trial court to (1) vacate the portion of its August 3, 2020 order denying relators' motion to transfer venue and (2) transfer venue to Reagan County. The writ will issue only if the trial court fails to comply.

200833f.p05

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

---

[24] Real Parties also accuse Relators of gamesmanship for various reasons but cite no authority stating gamesmanship, if any, provides grounds for denying Relators' meritorious venue-transfer motion. We reject this argument.